# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

ASHLEY WRIGHT,

      Plaintiff,

v.

                                         CASE NO.: 4:02cv363-Spm

WAFFLE HOUSE INC.,
A Georgia Corporation,

      Defendant.

_____/

## COMPLAINT

Plaintiff sues Defendant and states:

### JURISDICTION and VENUE

1.     This action for monetary damages, for declaratory and injunctive relief, and for other equitable and ancillary relief is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981a (hereinafter Title VII); under the Florida Civil Rights Act of 1992, §§ 760.01-760.11, Fla. Stat.; and under the common law of Florida.





2.     This Court has jurisdiction of the federal claims under 42 U.S.C. § 2000e-5(f), and

under 28 U.S.C. §§ 1331 and 1343(3) and (4); jurisdiction over the state claims arises

under 28 U.S.C. § 1367.

3.     Plaintiff Ashley Wright ("Wright"), is a female citizen of the United States and a

resident of Leon County, Florida.

4.     Defendant Waffle House ("Waffle House"), is an employer within the meaning of

Title VII and the Florida Civil Rights Act.  Defendant is a Georgia corporation which

transacts business in Leon County, Florida.

## CONDITIONS PRECEDENT

5.     Plaintiff received her Notice of Right To Sue letter from the U.S. Equal Employment

Opportunity Commission within 90 days before filing this action, and has otherwise

fulfilled all conditions precedent to the institution of this action.

## GENERAL ALLEGATIONS

6.     Plaintiff was employed at Defendant's restaurants in Tallahassee, Florida, from on or

about July, 2001, until April, 2002.

7.     Plaintiff was employed first as a hostess at Defendant's restaurant, Waffle House,

Store #1418 ("Store 1418").

8.     Plaintiff later progressed to the position of server and server/trainer at Store 1418.

9.     At or about the same time Plaintiff began working at Store1418, Robert Olszta

("Olszta") was a manager in training at Store 1418.

10.    Olszta initially treated Plaintiff in a professional manner.

11.    After Olszta's training period ended and he became a full-fledged manager of Store

1418, his demeanor towards the Plaintiff quickly changed.

12.     Plaintiff suffered sexual harassment by Olszta, Defendant's Manager of Store 1418.

13.     Plaintiff suffered retaliation by Defendant for reporting Olszta's violations of her rights.

14.     The following events are detailed for the purpose of example only and are not intended to be an exhaustive, all inclusive list.

15.     Olszta routinely said to Plaintiff, "you have a ghetto booty."

16.     Olszta would regularly try to "tickle" the Plaintiff, grabbing her ribs, stomach, and touching her back.  When the Plaintiff would ask him to stop, he would just laugh.

17.     The office in Store 1418 is located in the break room.  It has no windows; however there is a one-way mirror looking into the break room.

18.     On one occasion, the Plaintiff was in the office located in Store 1418's break room counting her drawer at the beginning of her shift.  The door to the office was open.

19.     Olszta came into the office and shut the door.  He then grabbed the back of Plaintiff's thigh and refused to let go despite Plaintiff's protests.  Plaintiff eventually got free from Olszta's grasp and left the room.

20.     Another day, Olszta came up to the Plaintiff, grabbed her and threw her over his shoulder so that her rear end was in his face.  Olszta carried the Plaintiff from the break room to the parking lot and would not put the Plaintiff down though she begged for him to release her.  Olszta finally let her go outside.

21.     The Plaintiff went to the office one day to pick up her paycheck, Olszta told the Plaintiff that she could earn "free hours" on her check if she performed sexual favors

3

for him.

22.    Olszta's behavior became unbearable and the Plaintiff reported his conduct to the
       District Manager, Aaron Martin ("Martin") on or about mid-September, 2001.

23.    Plaintiff asked Martin to take action to make Olszta stop and to relay her report of
       Olszta's misconduct to Martin's boss, Division Manager Gary "Marty" Posey, Jr.
       ("Posey").

24.    Martin, however, did nothing with the Plaintiff's report of sexual harassment.

25.    Meanwhile, rumors began to surface at the restaurant that the Plaintiff was having an
       affair with Olszta.

26.    The Plaintiff's mother, Nolene Wright, also worked at Store 1418 as a server.

27.    On or about the end of September, 2001, Nolene Wright called Posey to discuss the
       sexual harassment her daughter was suffering.

28.    Posey told Nolene Wright that Martin had never called him about the Plaintiff's report
       and he knew nothing about the situation.

29.    Posey came to Store 1418 and met with the Plaintiff and Nolene Wright in his pick-up
       truck in the parking lot.

30.    The Plaintiff and Nolene Wright told Posey everything that had been happening to the
       Plaintiff.

31.    After listening to the Plaintiff and Nolene Wright, Posey told them that if they brought
       a lawsuit, it would be like "taking money out of my pocket" and it would "take away
       from my kids and wife."

32.    Posey held a second meeting with Nolene Wright, Olszta, and a witness, Lisa Titus

("Titus").

33.    Posey verbally reprimanded Olszta after the meeting in front of Nolene Wright and Titus. The Plaintiff was not there.

34.    Posey later told the Plaintiff and Nolene Wright, that the only other thing he could do would be to transfer them both to another store.

35.    Posey subsequently wrote a letter that was supposed to be a true reflection of the Plaintiff's complaints of sexual harassment. He asked the Plaintiff and her mother to sign the letter.

36.    The Plaintiff and her mother refused to sign the letter because Posey characterized Olszta's lewd conduct as "playful" and simply "jokes" and otherwise mischaracterized and trivialized the events.

37.    Instead, the Plaintiff and her mother submitted their own memorandum of the events to Defendant's management.

38.    Defendant's management moved the Plaintiff and Nolene Wright to another Waffle House location on North Monroe Street, Tallahassee, Florida, Store #892 ("Store 892").

39.    As a result of being transferred, Plaintiff lost shifts and hence money.

40.    In October, Defendant's Corporate Headquarters sent an investigation team to Store 1418.

41.    One of Defendant's Corporate employees interviewed the Plaintiff during the investigation. The female interviewer asked Plaintiff whether she had come up behind Olszta and brushed against his rear end saying, "move that big ghetto booty out of the

5

way."  Plaintiff told her she had not.

42.     The interviewer then told the Plaintiff that she did not want to fire someone just
        because another employee was "mad at him."

43.     The interviewer failed to take Plaintiff's allegations seriously and instead made the
        Plaintiff feel as though she had done something wrong.

44.     The Plaintiff and her mother, Nolene Wright were at a local discount store where they
        saw Brian Summerlin ("Summerlin"), the manager of another Tallahassee Waffle
        House, in the parking lot.

45.     Summerlin berated Plaintiff and her mother, saying he heard about the Plaintiff's
        complaint and that because of them, he would have to move to another location; that
        he did not want to leave the store he was currently working at; and that it was all their
        fault that he would have to move.

46.     Eventually, Olszta was transferred from Store 1418.

47.     Summerlin took Olszta's place at Store 1418.

48.     Approximately a month or two after being moved to Store 892, the Plaintiff was
        moved back to Store 1418.

49.     On or about late December, 2001, Plaintiff was written up for an alleged cash register
        shortage by Summerlin.

50.     A few months later, on or about the first week of April, 2002, Plaintiff notified
        manager Summerlin that she would need two days off during the week of April 15,
        2002.  Summerlin said that would be fine.

51.     Plaintiff again discussed the requested time off with Summerlin during the week of

6

April 15, 2002.

52.   Waffle House, Inc. has a "six hour rule" regarding calling off shifts; in other words, an employee must alert management six hours or more before their next shift that they will not be in.

53.   Plaintiff called Summerlin on Friday, April 19, 2002 in the afternoon, and told him she would need the following two days off, April 20 and 21, 2002.

54.   Plaintiff followed Defendant's "six hour rule."

55.   Summerlin seemed angry but said, "whatever."

56.   Later that same evening, Summerlin called the Plaintiff's home and left a message that if she did not show up for her shifts, she would be fired.

57.   Plaintiff called Summerlin back and Summerlin said that it was a "blocked out" weekend and no one was allowed to call off per the orders of District Manager Bob Williamson ("Williamson").

58.   Williamson was aware of Plaintiff's allegations of sexual harassment by Olszta.

59.   Plaintiff had never heard the term "blocked out" before this conversation.

60.   Meanwhile, Summerlin had already given the weekend off to other workers.

61.   Plaintiff did not go to work that weekend; she had obeyed the "six hour" company policy for calling off shifts.

62.   Plaintiff was fired for calling off.

63.   On Saturday, April 20, 2002, Summerlin announced to all employees that if they called off a shift that weekend, they would be terminated.

64.   However, the following day, a server at Store 1418, Laura Mercer ("Mercer") did not

show up for her shift and was not fired.

65.    Defendant failed to discipline or discharge Olszta for his outrageous conduct in a timely fashion.

66.    Defendant has ratified the unlawful conduct of Olszta.

67.    Olszta acted as an agent of Defendant at all times and for all events material hereto.

68.    Defendant has ratified the unlawful retaliation of Posey, Summerlin, and Williamson.

69.    Posey, Summerlin, and Williamson acted as agents of Defendant at all times and for all events material hereto.

70.    Defendant failed to have effective policies and procedures in place to prevent and correct the wrongs stated herein.

71.    Plaintiff has had to retain counsel and owes reasonable attorney fees to vindicate her rights in these matters.

<u>**COUNT I**</u>
**TITLE VII 42 U.S.C. § 2000e, ET SEQ. AND 42 U.S.C. § 1981a**
**SEX DISCRIMINATION AND HARASSMENT**

72.    The Plaintiff realleges Paragraphs 1 through 71.

73.    The foregoing actions of Defendant constitute discrimination and harassment against Plaintiff based upon her sex in violation of Title VII of the Civil Rights Act of 1964, as amended.

74.    Plaintiff is female and therefore a member of a protected class within the meaning of applicable law.

75.    The disparate treatment, discrimination, and harassment described herein were based on Plaintiff's sex and negatively affected the terms, conditions, and privileges of her

8

employment.

76.     Plaintiff has suffered damages because of the Defendant's actions.

## COUNT II
### TITLE VII 42 U.S.C. § 2000e, ET SEQ. AND 42 U.S.C. § 1981a
### RETALIATION

77.     The Plaintiff realleges Paragraphs 1 through 71.

78.     The foregoing actions of Defendant constitute retaliation against Plaintiff in violation

        of Title VII of the Civil Rights Act of 1964, as amended.

79.     Plaintiff is female and  therefore a member of a protected class within the meaning of

        applicable law.

80.     The retaliation described herein was based on Plaintiff's exercise of rights protected

        by law to resist and oppose sexual discrimination and harassment and to participate

        in actions calculated to redress these grievances.

81.     Plaintiff has suffered damages because of the Defendant's actions.

## COUNT III
### FLORIDA CIVIL RIGHTS ACT OF 1992 CHAPTER 760, FLORIDA STATUTES
### SEX DISCRIMINATION AND HARASSMENT

82.     The Plaintiff realleges Paragraphs 1 through 71.

83.     The foregoing actions of Defendant constitute discrimination and harassment against

        Plaintiff based upon her sex in violation of the Florida Civil Rights Act of 1992, §§

        760.01-760.11, Fla.Stat.

84.     Plaintiff is female and therefore a member of a protected class within the meaning of

        applicable law.

85.     The disparate treatment, discrimination, and harassment described herein were based

on Plaintiff's sex and negatively affected the terms, conditions, and privileges of her employment.

86.   Plaintiff has suffered damages because of the Defendant's actions.

## COUNT IV
## FLORIDA CIVIL RIGHTS ACT OF 1992 CHAPTER 760, FLORIDA STATUTES
## RETALIATION

87.   The Plaintiff realleges Paragraphs 1 through 71.

88.   The foregoing actions of Defendant constitute retaliation against Plaintiff in violation of the Florida Civil Rights Act of 1992, §§ 760.01-760.11, Fla.Stat.

89.   Plaintiff is female and therefore a member of a protected class within the meaning of applicable law.

90.   The retaliation described herein was based on Plaintiff's exercise of rights protected by law to resist and oppose sexual discrimination and harassment, and to participate in actions calculated to redress these grievances.

91.   Plaintiff has suffered damages because of the Defendant's actions.

## COUNT V
## BATTERY

92.   The Plaintiff realleges paragraphs 1 through 71.

93.   The foregoing actions of the Defendant's agent, Olszta, include unwanted and offensive touching of the person of the Plaintiff against her will.

94.   The foregoing actions of Defendant were wilful, wanton and in reckless disregard of Plaintiff's rights.

95.   Plaintiff has suffered damages because of Defendant's actions.

10

96.     Defendant should be punished to deter future violations.

## COUNT VI
## FALSE IMPRISONMENT

97.     The Plaintiff realleges paragraphs 1 through 71.

98.     The foregoing actions of the Defendant's agent, Olszta, include intentionally causing the complete restraint of the Plaintiff against her will.

99.     The foregoing actions of Defendant were wilful, wanton and in reckless disregard of Plaintiff's rights.

100.    Defendant should be punished to deter future violations.

## COUNT VII
## NEGLIGENT RETENTION AND SUPERVISION

101.    The Plaintiff realleges paragraphs 1 through 71.

102.    Defendant breached its duty to discipline or discharge Olszta, Posey, Summerlin, and Williamson, for actions constituting sexual harassment, retaliation, battery, and false imprisonment under Federal and Florida law, and to have effective policies, procedures, and training concerning these matters.

103.    As a direct and proximate result of the foregoing failures of Defendant to properly discipline or discharge Olszta, Posey, Summerlin, and Williamson, and to have effective policies, procedures, and training, Plaintiff has suffered damages.

11

**Prayer for Relief**

WHEREFORE, Plaintiff prays for the following relief:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     judgment against Defendant and for the Plaintiff awarding compensatory and punitive damages against Defendant on each count for the Defendant's violations of law enumerated herein;

(c)     judgment against Defendant and for the Plaintiff permanently enjoining Defendant from future violations of law enumerated herein and remedying all past and future lost income, raises, and other benefits of which Plaintiff has been unlawfully deprived;

(d)     prejudgment interest;

(e)     judgment against the Defendant and for the Plaintiff awarding the Plaintiff her attorneys' fees and costs; and

(f)     such further relief as is equitable and just.

**Jury Demand**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

Richard E. Johnson
Florida Bar Number 858323

Lisa C. Lambert
Florida Bar Number 495298

12

Law Offices of Richard E. Johnson
314 West Jefferson Street
Tallahassee, Florida 32301
850/425-1997
850/561-0836 facsimile

Counsel for Plaintiff